# In the Court of Common Pleas of Delaware County.

## ROOT & RUST *v.* THE OIL CREEK AND ALLEGHENY RIVER RAILROAD COMPANY.

A railroad company formed by the consolidation and merger of two or more railroad companies, is responsible for the debts and liabilities of each of the merging roads arising prior to such consolidation.

A provision in the charter of a railroad which makes it subject to the provisions and restrictions of the act of February 19, 1849, limits its right to charge for toll and motive power, when the cars used for transportation over the road are owned or furnished by others, to two cents for each car, and three cents for each ton per mile carried, but does not limit it to FREIGHT charge, if it furnish the car.

If a consignee who furnishes such a car, pays to a connecting road the back charges of the company thus restricted, in order to get possession of his goods, which charges so paid are largely in excess of the toll authorized. such a payment is a payment to the company restricted, and enures to the benefit of the consignee, the same as though it was paid directly to the original company.

A voluntary payment, although it be unauthorized, cannot be received back, but where a consignee, in order to secure his goods, of which he has need, and which, if not taken by him are exposed to risk of fire and damages, pays the charges of the party having the goods in possession, such a payment is not voluntary, and if illegal can be recovered back.

The difference between tolls and freight explained.

Charge of

BUTLER, P. J.   Gentlemen of the Jury:—This suit, as you have learned, is brought by Root and Rust, plaintiffs, against the Oil Creek and Allegheny River Railroad Company, defendants, to recover a sum of money amounting to upwards of one hundred thousand dollars. This money, the plaintiffs say, is due on account of overcharges made against them by the Oil Creek Railroad Company, for the transportation of. oil over its road, between April 6th, 1866, and the 27th of February, 1868.

The defendant is not, as you have observed, the Oil Creek Railroad Company, but having acquired the rights and property of this company, under an Act of Assembly relating to the subject, the defendant has become responsible for all its obligations, and the suit is to be treated, therefore, precisely as if it had been brought against the Oil Creek Railroad Company while it existed.

Are the plaintiffs entitled to recover the money claimed, or any part of it?

The case presents four questions of fact for your determination:

*First.* Did the plaintiffs ship *oil* over the Oil Creek Railroad? If they did, then,

*Second.* Were they *overcharged?* If they were, then,

*Third.* Did the *plaintiffs* pay those charges to the *Oil Creek Railroad Company?* If they did, then,

*Fourth.* Were they *required* to pay, or did they do it *voluntarily.*

The first of these questions—Did the plaintiffs ship oil over this road —needs but little explanation.

If they purchased and paid for the oil which was consigned to them, as they say they did, before it started upon its journey, then they were its shippers.

And this question is to be answered by reference to the evidence bearing upon it.

The second question (supposing the plaintiffs did ship oil over the road)—were they overcharged—is to be solved, by determining, whether the plaintiffs were liable to pay *freight*, as for *carrying their oil in tanks* or to pay *tolls*, as for *hauling their cars over the road.*

If they were liable to pay *freight*, then they were *not* overcharged. We so instruct you, as matter of law.

The railroad company had a right to charge whatever it saw fit for freight, and those who chose to send freightage over its road could not complain.　They could send, or not send, at their pleasure ; but if they did send they must submit to the charges.

If, on the other hand, the plaintiffs were liable only for *tolls* as for *hauling their cars*, or cars furnished by them, loaded with oil, then it is equally clear the plaintiffs were *overcharged.*

For as respects *tolls*, the railroad company is limited by law to two cents for each burden car (4 wheels being a car), and three cents per mile for each ton of 2000 pounds carried therein.

The charges here greatly exceed this, being made according to the rates of the company for freight, under claim that the plaintiffs were properly liable to be so charged.

And thus we are brought to the great question in this cause, the question upon which the parties have put out their strength, and upon which, doubtless, it is mainly to be decided, to wit :

Did the plaintiffs *furnish the cars*, which carried the oil, *to the railroad company to be hauled over the road as their cars ?*　If they did, they were liable only for *tolls*, and consequently they have been overcharged. Or did they furnish simply the *oil and the vessels (tanks) in which it was contained ?*　If so, they were liable for *freights*, and consequently have *not* been overcharged.

If you find the plaintiffs were overcharged, then you pass to the third question : Did the *plaintiffs* pay these charges to the *Oil Creek Railroad Co.*

.If those who paid the company at Corry, should be treated as having paid on behalf of the plaintiffs, or if in consequence of the course or custom of business between the several railroad companies carrying the oil, the Erie Company, by whom the money was collected at Jersey City, should be treated as receiving it for the Oil Creek Company, then the result is the same as if the payment had been made directly by the plaintiffs to the Oil Creek Company.

It is sufficient, if the money was paid by the plaintiffs to the Oil Creek Railroad Company either directly or indirectly, as through agents.

If you find the plaintiffs were overcharged, and that they paid these charges to the Oil Creek Railroad Co., then you will come to the fourth question stated : Were they *required*, virtually forced, to pay these charges or did they do it voluntarily ?

Money, which a man pays voluntarily to another, cannot be recovered back.   It makes no difference that he did not owe it ; he should not have paid.   But if he is virtually forced to pay, as by reason of the circumstances in which he is placed by those making the demand, then the payment *is not voluntary*, and he may recover back what has thus been improperly obtained.

If, therefore, the plaintiff's situation was such that they were compelled to pay, or run the risk of impending loss, as from non-delivery and waste of their oil, and were thus induced to pay more than was due, then the payment was *not voluntary*.

Such are he questions upon which the cause depends.   And as tending to a further explanation of them, and for the purpose of getting their respective views before you in this connection, the parties have requested us to say certain things to you, which they have presented in the form of points.

The plaintiffs ask us to say :

*First.* That the defendants are by their charter made liable to all the restrictions contained in the act of the 19th of February, 1849, and that under that act they had the right to charge for toll and motive power on cars owned or furnished by others than the defendants, not more than the rates prescribed by that law, to wit, three cents per mile, for each ton of 2000 pounds of freight carried, and two cents per mile for each burden or freight car, every four wheels being computed a car.

This is true.   We affirm it.

*Second.* If the jury find from the evidence, that the oil claimed by the plaintiffs was their oil, and that they paid the freight on the same, and that the tank cars in which the oil was transported were not owned or furnished to the plaintiffs by the defendants, but that the trucks were owned by the Erie Railroad Company or Atlantic and Great Western Company, and the tanks by the Oil Tank Company, and when mounted with tanks, the tanks became oil tank cars, the use of which the Oil Tank Company had the right to control, and in the exercise of that control rented to the plaintiffs for the transportation of their oil, who furnished them to the defendant for said transportation, then the defendant could only charge for toll and motive power, and were limited by the restrictions of the act of 1849."

This also is true, and is affirmed.

" *Third.* If the jury believe that the tank cars used in the transportation of the plaintiffs' oil, from April, 1866, to July, 1867, were not owned or furnished by the defendant, but were furnished by the plaintiffs, who

rented them from the Oil Tank Company, then the defendant could only charge for toll and motive power the limits fixed by the act of 1849."

This, also, is correct.

And the plaintiffs further request us to say in this connection, that:

"In considering this question, as to who furnished the cars, the jury may take into consideration the testimony going to show that the plaintiffs rented those cars from the Oil Tank Company, paying about one hundred dollars per car, per trip, for the use of the tank car; that the Oil Tank Company controlled the use of the car; all applications for their use having to be made to them. That the railroad company who owned the trucks of the tank cars charged the Oil Tank Co. for transporting these cars empty from Jersey City to Corry. That the defendant charged the Oil Tank Company for taking the empty cars from Corry to the place of loading, and that all leakages was paid by the Oil Tank Company to the shippers on account of these oil tank cars."

And we do say so. You may and should, in passing upon this question, consider the matters here referred to by the plaintiffs, to the extent you find them proved. But you must in this connection also remember and consider the testimony produced by the defendant, bearing on this same question, and tending to support its allegations.

"*Fourth.* If the jury believe that the tank cars used in the transportation of the plaintiffs' oil from July, 1867, to February, 1868, were owned or furnished by the plaintiffs, who secured them from the Erie Tank Line, then for toll and motive power charges, the defendant could charge only under the limits fixed by the act of 1849."

This is true, and is but a repetition of what we have before said.

"*Fifth.* If the jury find from the evidence that the Erie Railroad Company, and the Atlantic and Great Western Railroad Company had parted with the cars to the Oil Tank Company, who furnished them to the plaintiffs, and that the defendant had notice of the fact that the railroad owning the cars had so acted, then the defendant cannot avoid the limitation of the law of 1849, by the payment of any sum for mileage to the Erie Railroad, or to the Atlantic and Great Western Railroad Company."

This is true, provided you further find that the plaintiffs furnished the cars to the Oil Creek Railroad Co. for transportation as their cars. Under such circumstances, of course, payment of wheelage to the other railroad companies by the Oil Creek Railroad Company, would not deprive the plaintiffs of their right to have the cars transported over the road subject to the payment of *tolls only.*

The evidence that wheelage was paid to the other railroad companies, for the use of the cars (or tending to show this), was heard only for the purpose of shedding light upon the important question : Who did furnish the cars ?

"*Sixth.* If the jury find from the evidence that the payment of mileage

by the defendant to the Erie Railroad Company and to the Atlantic and Great Western Railroad Company, was merely a settlement between different roads for the excess due in the use of each others cars, then the payment of mileage was not, in itself, a rental of the cars."

As stated, this is true. Of course, the payment of mileage or wheelage, was not, of itself, a rental of the cars, but such payment is evidence bearing upon the question above stated : Who did furnish the cars ?

"*Seventh.*—If the jury find from the evidence that any part of the money paid by the plaintiffs to the defendant was illegal charges, and that the same had to be paid, in order that the plaintiffs could secure possession of their oil, which was held for such payments by the Erie Railroad Company, that the risk of fire and evaporation and leakage, was great, and the necessity for possession urgent, then the plaintiffs are entitled to recover back such charges illegally claimed and paid."

This is true. Money illegally collected by the Oil Creek Railroad Company from the plaintiffs (if any was so illegally collected) by stress of such circumstances, could not be regarded as having been *voluntarily* paid, and might, therefore, be recovered back.

"*Eighth.* If the jury believe that the oil consigned to E. McKensie, or to the agent of the Oil Tank Company, and which the plaintiffs claim as their oil, was the oil of the plaintiffs, and that they paid freight, then it is immaterial that the cars in question were not consigned to them by name."

This is true. Consigning the oil in any other name than the plaintiffs would be unimportant if the oil belonged to them, and they furnished the cars to the railroad company to transport it.

"*Ninth.* The evidence fails to connect Doan and Company with Root and Rust. Their action, at Corry, therefore, either in the payment of the charges of the Oil Creek Railroad Company, for transporting the oil, and receipting for the goods does not affect the plaintiffs claim."

"*Tenth.* If the jury believe that Doan or Doan & Co., or the Oil Tank Company, in paying the charges of the Oil Creek Railroad Company, and receipting for the oil at Corry, acted as agents for the Atlantic and Great Western Railroad Co., and not for the plaintiffs, then their action in no way affected the claim of the plaintiffs."

This is also true. The evidence showing that the oil was way-billed to Corry, the terminus of the Oil Creek Railroad, and freight there paid, (sometimes by Doan & Co., and sometimes by others,) was admitted as part of the transaction of shipping the oil, in the hope of shedding thereby some light upon the transaction itself, and the relations existing between the plaintiffs and the Oil Creeek Railroad Company.

And now the defendant asks us to say :

"*First.* That if the jury believe from the evidence that the Oil Creek Railroad Company owned the cars in part, and furnished the other cars

for the transportation of oil to plaintiffs, which others were owned by other railroad companies, and for which the Oil Creek Railroad paid car service or wheelage, then the law made no restrictions as to charges, and the plaintiffs cannot recover."

And we do say so. This is correct.

"*Second.* If the jury believe from the evidence that the plaintiffs did not pay any money to defendants, or to the Oil Creek Railroad Company, for the transportation of oil, but that the charges of the Oil Creek Railroad Company were paid by other parties, or by other railroad companies, then there is no privity between the plaintiffs and defendants, and the plaintiffs cannot recover."

This is true, provided the other parties, and the other railroad companies here referred to, did not pay the Oil Creek Railroad Company for the plaintiffs—on their behalf. If, however, these other parties, and other railroad companies, acted in this respect for the plaintiffs; or if the Erie Company, in collecting the money at Jersey City, represented the Oil Creek Railroad Company, and collected the money on its account, then the payment referred to should be regarded as payment by the plaintiffs to the *Oil Creek Railroad Company.*

"*Third.* If any payments were made by the plaintiffs to the Oil Creek Railroad Company, and if they were voluntary payments, made under a claim of right, upon the part of said company, then no recovery back can be had from the defendants in this case for such payments, and the plaintiffs in this case must fail."

This is true, if they were *voluntary payments.* But, as we have before stated, a payment made under stress of circumstances, as to avoid impending danger of loss, would not be a *voluntary payment.*

"*Fourth.* That the only limitation in the act of 1849, to which the Oil Creek Railroad Company was subject, was as to the rates of toll; that there was no limitation as to freight, that the company, as the owner of a highway, were authorized to charge for the use of the same; said toll not to exceed a certain limit; that as a transportation company it was not limited as to the freight charges for the transportation of freight; that if the evidence shows that plaintiffs paid the sums for which this suit is brought, as freight, they cannot now recover, and the verdict should be for the defendant."

This is true, provided the oil was *shipped by plaintiffs* "*as freight,*" or if it was not so shipped, then provided the plaintiffs paid the money "as freight," *voluntarily.*

" *Fifth.* That the act of 1849 is a general law, and a payment in excess of the charges and rates fixed by that law, in ignorance of such limitation, would be payment under a mistake of law, and as the plaintiffs state the money paid in this case was paid in ignorance of said law, the verdict should be for defendants."

We cannot instruct you as here requested; the evidence does not warrant it.

" *Sixth.* If the terminus of the late Oil Creek Railroad was at Corry, and it had no connection with the Atlantic and Great Western Railroad Company, and if evidence shows that the oil in controversy was shipped to Corry as a terminus of the shipment, then the freights were paid and the oil re-billed and shipped to New York; there is no privity between the defendants and the Erie Railroad Company, to whom the money was paid, and the plaintiffs cannot recover, and the verdict should be for the defendants."

" *Seventh.* That if the oil in controversy was delivered at Corry to Doan & Co., and the freights paid, the receipt of the oil would end the shipment, and the payment to the Erie Railroad Company would not be payment to the defendants, and no action can be maintained for money so paid against defendants, and the verdict should be for defendants."

What is here asserted is true; but if it was the course of business at Corry for the Atlantic and Great Western Railroad Company, or its agents, (and you will judge whether Doan & Co. were its agents in this respect) to pay the charges of the Oil Creek Company at that point, the same being again paid by the Erie Company, who finally collected them from the plaintiffs—by means of their hold on the possession of the property—then the payment of the Atlantic and Great Western Railroad Company to the Oil Creek Railroad Company at Corry, was a payment on behalf of the plaintiffs. A railroad company has by law a lien on the property it carries, and can compel payment of its proper charges by retaining possession.

And when connecting roads pass such property from road to road, under a custom of each receiving road paying the prior charges of the others, the last collecting the whole from the consignee, the prior payments enure to the benefit of the consignee, from whom the money is thus finally collected, and will be treated precisely as if they had been paid by him directly.

"*Eighth.* That the answer to the bill of discovery put in evidence by plaintiffs themselves, is evidence in all its parts for the consideration of the jury."

This is true, and the whole of the answer should be carefully considered; but the jury may credit one part of it, and not another, if in their judgment, upon examination of the entire case, it is proper to do so.

"*Ninth.* Unless the jury can find from the evidence that the plaintiffs owned or controlled, as their own property, specific cars, and so owning and controlling the same, tendered them for transportation by the Oil Creek Railroad Company as such private cars, the verdict must be for the defendants."

This is true. The language, however, must not be misunderstood.

It is not necessary to find that the plaintiffs *owned* the cars, but that they owned the use and had the control of them, as of their own property,; and having such use and control, furnished them to the Oil Creek Railroad Company for transportation, as their (the plaintiffs') cars, for the time being.

"*Tenth.* To sustain a verdict for plaintiffs, it is required that the Oil Creek Railroad Company should have been informed by plaintiffs that the cars were private cars, owned or controlled by plaintiffs, and that such cars should be tendered for transportation, as such private cars of plaintiffs.''

To this we answer : To authorize a verdict for the plaintiffs it is necessary that the Oil Creek Railroad Company should have been informed, or otherwise had knowledge, that the plaintiffs owned the use, and had the control of the cars, as before stated (in answer to the preceding point), and that such cars were furnished by the plaintiffs for transportation as theirs (the plaintiffs' cars), for the time being. For if the company had not such information or knowledge, and were thus allowed to and did regard and treat the cars as belonging to and under the control of other railroad companies, compensating such other companies for their use while on the Oil Creek Road, along with other cars of such other companies used there, then the plaintiffs cannot complain that they were charged *freight* instead of *toll.*

"*Eleventh.* That the fact testified to by plaintiffs themselves, that they had no knowledge that owners of private cars had any special rights as to rates of transportation, is evidence which the jury should consider in determining whether plaintiffs ever tendered any cars for transportation as private cars, owned or controlled by themselves.''

If the plaintiffs had no knowledge that persons owning cars, or owning the use and having the control of cars, had special rights as to rates of transportation, this fact should be considered in determining whether the plaintiffs did tender any cars as their own, for transportation ; whether the plaintiffs had, or had not, such knowledge, (in regard to the rights of persons-owning, or furnishing and tendering cars) the jury will judge ; and in so judging will particularly remember whatever the plaintiffs themselves have said on the subjuct.

Now gentlemen, we return to the questions stated at the outset.

*First,* did the plaintiffs ship oil over the Oil Creek Railroad—in other words, did they own the oil which was consigned to them, when it started on its journey ? You will consider the evidence bearing on this question—to which the counsel for the respective parties have referred you—and determine how it should be decided. If you find they did ship the oil, then,

*Second,* were they overcharged ? This, as we have seen, depends upon whether they were liable to a charge of *freight,* or merely of *toll.* And this again depends upon whether the plaintiffs furnished simply the

*oil and tanks,* or furnished the *cars* also, to the railroad company, as their cars for the time, to be hauled for them (the plaintiffs) over its road.

In passing upon this question, you will bear in mind the plaintiffs' allegations—that the Oil Tank Company procured from the Erie and other Railroad Companies a number of platform cars, of which it obtained the use and control in consideration of mounting them with tanks, and keeping them employed in the transportation of oil; that the Oil Tank Co. after so mounting the platforms with tanks, rented or hired the cars thus mounted to the plaintiffs; that after the Tank Company sold out to the Erie Company, the Erie Company continued so to rent or hire these cars to the plaintiffs, charging about one hundred dollars per car for its use, each trip, with a guarantee against waste; that the plaintiffs, having thus obtained the use and control of these cars, loaded them with oil and tendered them to the Oil Creek Railroad Company, to be hauled over its road, as plaintiffs' cars; that when passing over the road they were under the care of agents of the Tank Company, and that the railroad company charged for returning the empty cars, as it would not have done if the cars were its own, or in its use.

To these allegations of the plaintiffs the defendant makes an emphatic denial. It says the railroad companies who allowed their platform cars to be mounted with tanks, did *not* give up or part with the use or control of such platform cars, but employed them afterwards to carry oil as *freight,* just as they had employed their cars before to carry such freight; that the tanks mounted on cars, simply took the place of *barrels* previously used; that they were a substitution merely of large vessels, to be carried upon their cars, for the smaller ones previously carried—for the mutual benefit of both parties; that the money paid the Tank Company was for the use of its *tanks,* and its guaranty against leakage and waste; that the Oil Creek Railroad Company paid the Erie and other companies for the use of these cars, under the title of wheelage, after being mounted with tanks, just as it paid for all other cars, belonging to other railroad companies, used by it to carry freight over its road; and therefore, that it, the Oil Creek Railroad Company, and not the plaintiffs, *furnished the cars-* -the plaintiffs furnishing merely the vessel in which their oil was confined; that the charge on returning cars to the oil region was on account of the tank alone, and in place of the former charge for returning empty barrels.

You have heard the testimony adduced by the parties to support their respective allegations. It has been several times very fully cited by counsel on the one side and the other; and further repetition of it by the court would not aid you.

Examining it with great care—bearing in mind the comments of counsel, and also remembering that the burden is on the plaintiffs, in the first instance to prove the truth of their allegations, for this is so—you will determine how this important question should be decided. How did the parties themselves understand the matter at the time? Examine their acts,

as well as all the circumstances attending the transaction, and see whether you can determine; for if you can this will greatly aid you.

If you do *not* find that the plaintiffs owned the use and had the control of the cars, as they allege, and furnished them to the railroad company, to be hauled over its road for them as their (the plaintiffs') cars, then, as we have before said, they were not overcharged, and cannot, therefore, recover. If, however, you do find they owned the use and had the control of the cars, and furnished them to the railroad company, to be hauled over its road as their cars, then they were liable only for *tolls*, and have, therefore, been overcharged. And in this event it will be necessary to ascertain how much the overcharges amount to. In this connection, to avoid trouble and uncertainty, the defendant has, very properly, admitted, that if the railroad company was liable only for *tolls*, not *freight*, the overpayment on the oil which the plaintiffs claim to have shipped is $88,259.74.

This admission, however, must not be misunderstood; it is not an admission of *overcharge*, but (while asserting their right to charge *freight*) the defendant admits simply, that if limited to *tolls*, their charges would have been $88,259.74 less than they recovered. And this the plaintiffs accept as the true amount. If, therefore, you find that the plaintiffs were liable for *tolls only*, you will readily ascertain the extent of overcharges on that account.

The plaintiffs, however, in addition to the sum above stated, with interest, claim $2,573, which they say was improperly charged them for returning cars from Corry to the place of lading. You will judge and determine whether the evidence sustains this additional claim.

Whatever you ascertain the amounts of the overcharges to be (if you find any such overcharges), the plaintiffs will be entitled to recover with interest; provided you further find, as before indicated, that these charges were paid by the plaintiffs to the Oil Creek Railroad Co. directly or indirectly; and provided also, you further find, that they did *not* pay it *voluntarily*. As we have before explained, if they were virtually forced to pay, by stress of their situation, then the payment was not voluntary.

Now you will take the case, and examining it with the patience and care, which the large interests involved demand, will decide it—casting from you, as dangerous to be remembered, every suggestion you may have heard tending to excite sympathy for the one side, or prejudice against the other. It is of no importance whatever, whether the plaintiffs' enterprise was profitable or otherwise. And it is of as little consequence, that one of the parties is composed of individuals, and the other a corporation; each is entitled to a *fair* and *impartial* trial—a trial upon the *law* and *evidence* alone. If anything else is allowed to influence our deliberations, injustice will be done to the one or the other of the parties, and greater injustice even to yourselves.

The jury found a verdict for the plaintiffs for $118,106.77.